# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

|                                        |     |                             |
|----------------------------------------|-----|-----------------------------|
| **WILLIAM B. ACKEN, JR., ET AL.,**     | )   |                             |
|                                        | )   |                             |
| Plaintiffs,                            | )   | Case No. 1:14CV00011        |
|                                        | )   |                             |
| v.                                     | )   | **OPINION AND ORDER**       |
|                                        | )   |                             |
| **THE KROGER COMPANY, d/b/a**          | )   | By: James P. Jones          |
| **BLUEFIELD BEVERAGE,**                | )   | United States District Judge |
|                                        | )   |                             |
| Defendant.                             | )   |                             |

*Roger W. Mullins, Roger W. Mullins, PLLC, Tazewell, Virginia, and Steven R. Minor, Elliott Lawson & Minor, Bristol, Virginia, for Plaintiffs; Bryan Grimes Creasy and Justin E. Simmons, Johnson, Ayers & Matthews, P.L.C., Roanoke, Virginia, for Defendant.*

In this diversity action arising under Virginia law, the facts show that a commercial tenant gave proper notice of nonrenewal of the lease. Shortly before the lease term ended, the property was damaged by thieves. Following termination, the tenant — mistakenly, it claims — continued to pay monthly rent for a period of time. The landlord and tenant dispute the responsibility for the cost of repair and alleged consequential damages, as well as whether the landlord must repay the rent payments made after the termination of the lease.

For the following reasons, I will grant in part and deny in part cross motions for summary judgment. I find that the tenant breached the insurance

provision of the lease by not paying for repairs, but that the landlord is not entitled to consequential damages and must repay the rent payments made after termination of the lease.

## I.

This action was initially filed in state court by the owners of the property, William B. Acken, Jr. and Tammy Lynn Acken (the "Ackens"), against their tenant, The Kroger Company, doing business as Bluefield Beverage ("Kroger"). Kroger timely removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446, with subject-matter jurisdiction existing pursuant to 28 U.S.C. § 1332(a). After removal, the Ackens filed an Amended Complaint. In it, they allege breach of contract, negligence, and waste. The Ackens seek various damages, including costs of repair for damaged heating, ventilation, and air conditioning ("HVAC") units located on the property leased by Kroger, lost rental income, attorneys' fees, holdover rent, and pre-judgment interest. Kroger has asserted a Counterclaim against the Ackens alleging conversion and unjust enrichment associated with the alleged overpayment of rent.

The parties have now filed cross-motions for summary judgment. The Ackens seek summary judgment on their claims alleging failure to repair or pay for the damage to the HVAC units, a holdover claim, and Kroger's counterclaim for conversion and unjust enrichment. Kroger seeks summary judgment on all claims

asserted by the Ackens as well as its Counterclaim. The parties have briefed and orally argued their motions and they are ripe for decision.

II.

The following facts are taken from the summary judgment record and unless otherwise stated, are undisputed.

On September 1, 2010, the parties to this case entered into a written agreement (the "Lease") for the lease of a building owned by the Ackens in Bluefield, Virginia (the "Premises"). Kroger, a retail grocery chain, intended to use the Premises as a warehouse for one of its former enterprises, Bluefield Beverage.

The Lease was initially for a one-year term beginning on January 1, 2011, and expiring on December 31, 2011. It provided an option for four additional renewal terms of the same duration. The Lease required 90-days notice before the expiration of a lease term to avoid automatic renewal for another one-year term.

The annual rent for the initial term was $179,200, which was to be paid in 12 monthly installments of $14,933.33. The annual rent was set to increase by $3,200 during each renewal term.

Throughout the Lease, various provisions referenced Kroger's obligation to maintain the Premises. For example, under the "Use and Occupancy" provision, the Lease stated that "Tenant shall not commit or permit any waste, damage,

disfigurement or injury to the Premises, or to the improvements from time to time thereon made or fixtures or equipment located thereon."  (Def.'s Br. in Supp. of Mot. for Summ. J. Ex. 2, at § 3.1, ECF No. 25-2.)  Similarly, under the "Surrender of Premises" provision, the Lease stated that "the Premises . . . shall be surrendered to Landlord in good and sanitary order, condition and repair except for ordinary wear and tear."  (*Id.* at § 17.)  Under the "Alterations" provision, the Lease also provided that "Tenant shall surrender the Premises in as good condition as they are now, ordinary wear and tear excepted."  (*Id.* at § 6.1.)

The Lease also contained a triple net provision, requiring Kroger to pay "its prorata share of real estate taxes, utilities, repairs and routine maintenance expenses in connection with the Premises, except as otherwise provided in this Lease."  (*Id.* at § 5.1.)  Kroger was required to "not cause or permit any waste, damage or injury to the Premises" and "perform all ordinary repairs and maintenance in and about the Premises as Tenant deems necessary to prevent waste, damage or injury to the Premises, ordinary wear and tear and *damage from insured casualty excluded and excepted*."  (*Id.* at § 5.4 (emphasis added).)  In turn, the Lease required that

> [i]f, during the term hereof, the Premises shall be damaged or destroyed by fire or any other casualty, in whole or in part, Landlord shall, with reasonable dispatch and at its own cost and expense, *but only to the extent funds are available from the insurance proceeds, if any*, restore the Premises to a kind and quality substantially similar to that existing immediately prior to the destruction or damage.

(*Id.* at § 9.1 (emphasis added).)   These provisions — Sections 5.4 and 9.1 of the Lease — required that any repairs necessitated by casualty loss to the Premises were to be covered by insurance proceeds.

Kroger was obligated to insure the Premises "for the mutual benefit of Tenant and Landlord."  (*Id.* at § 5.3.)  Kroger was required to obtain "[a] standard fire and all risk insurance policy insuring the building constituting a part of the Premises for the estimated full replacement value thereof."  (Id. at § 5.3(A).)  As an alternative to this requirement, Kroger had "the right to elect to insure or self insure the Premises and/or Common Area against fire and casualty upon delivery of notice of such election to Landlord."  (Id. at § 5.3(C).)  Kroger elected to self insure the Premises.  The parties have not provided any documents, other than the Lease, that set forth any terms or limitations of the self insurance coverage provided by Kroger.

In January 2012, during the first renewal term of the Lease, Kroger decided to shut down Bluefield Beverage as of April 2012.  On April 10, 2012, Kroger notified the Ackens that it was terminating the Lease at the end of the first renewal term on December 31, 2012.  Kroger thus satisfied the 90-day notice of termination requirement.

When Kroger ceased operations at the Premises, it began to remove its equipment, products, and personnel. By November 2012, the Premises were empty.

On or about December 9, 2012, prior to the termination of the Lease, copper piping was stolen from four exterior HVAC units located on the Premises. The theft of the copper piping caused significant damage to the HVAC units. Mr. Acken discovered the damage, which he reported to Kroger. Kroger then contacted the police. The police, however, were unable to determine who committed the theft or how the individuals responsible had gained access to the Premises.

At the time the HVAC units were damaged, Kroger was employing a security firm to monitor the Premises. The Premises were also secured by a perimeter fence with two locking gates.[1]

---

[1] The Ackens assert that Kroger has failed to support factual claims in its motion for summary motion with appropriate documentation that is based on personal knowledge as required by Federal Rule of Civil Procedure 56(c)(4). ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.") Specifically, the Ackens assert that Kroger improperly relies on answers to interrogatories as evidence that

> Kroger maintained security at the Ackens' warehouse after it ceased operations at the building, . . . ; that Kroger "made the repairs to the Property required by the Lease," . . . ; that Kroger surrendered possession to the Ackens before December 31, . . . ; and that the payments to the Ackens in 2013 were made by mistake.

(Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. 3, ECF No. 35.)

Prior to the theft of the copper piping, there had been no vandalism, theft, or other type of criminal activity at the Premises or in its vicinity during the term of the Lease. Furthermore, the individuals responsible for the copper piping theft did not steal copper piping from the HVAC units of two other buildings located near the Premises. The two other buildings shared the same perimeter fence and locking gates, and were owned by the Ackens.

Before vacating the Premises, Kroger made various repairs and returned the keys to the Ackens. Kroger completed these acts prior to December 31, 2012. Kroger, however, did not repair the damage to the HVAC units prior to the termination of the Lease.

In January 2013, the Ackens demanded that Kroger pay for repairs to the damaged HVAC units. Both parties have obtained various repair estimates. While

---

For purposes of my ruling, the Ackens' Rule 56(c)(4) argument is not determinative. For example, the security issue is disputed, but basic facts about the security measures in place at the Premises are supported by other documents in the record, including reference to (1) the employment of the security firm in Kroger's answer to the Ackens' second requests for admission and (2) the existence of property fencing in Mr. Acken's deposition. The court may reference these facts pursuant to Federal Rule of Civil Procedure 56(c)(1)(A).

Moreover, as discussed below, any issue associated with the sufficiency of repairs is irrelevant, because Kroger was not under a contractual duty to repair the damage to the HVAC units as a tenant. Also, the issue of whether Kroger surrendered possession is essentially a legal argument that Kroger maintained holdover possession of the Premises, which is not a factual issue. Lastly, Kroger's mistaken payment argument is not determinative for purposes of summary judgment, because Kroger was not liable for rent after the termination of the Lease.

Kroger surrendered the Premises in December 2012, it continued to make monthly rental payments to the Ackens until October 2013, when it discovered its error. The payments made during this 10-month period totaled $162,458.20. The Ackens never notified Kroger of their receipt of the 2013 payments, but did deposit the checks. The Ackens contend that they believed that the 2013 rental payments were made in response to their demand that rent be paid while they were seeking repair of the HVAC units.

After Kroger discovered its error it stopped payments and demanded the return of the 2013 payments, which the Ackens refused. Kroger subsequently offered the Ackens the option to retain a portion of the 2013 payments in the amount of a HVAC repair estimate, if the balance was returned to Kroger. The Ackens rejected Kroger's offer and filed this suit.

To date, the HVAC units have not been repaired and the Premises have not been rented to another tenant. The Ackens say they have made attempts to rent or sell the Premises since April 2012, but their efforts have been unsuccessful. The Ackens have not claimed that any prospective tenant or buyer has raised concerns regarding the unrepaired status of the HVAC units.

III.

Summary judgment is appropriate when the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Id.* at 255; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## A. Kroger's Insurance Coverage.

In their motion for summary judgment, the Ackens argue that Kroger breached the Lease by failing to comply with the insurance requirements or, in the alternative, by failing to provide the necessary repairs to the HVAC units.[2] In turn, Kroger seeks summary judgment regarding the breach of contract and negligent claims asserted in the Ackens' Amended Complaint.

The parties' arguments require the court to interpret the contractual language of the Lease. Virginia substantive law applies to this task.[3] Pursuant to those rules

---

[2] The parties do not dispute that the HVAC units were permanent fixtures and thus part of the Premises.

[3] In a diversity case, I must apply the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). The Lease states that it "shall be construed and enforced in accordance with the laws of the Commonwealth of Virginia." (Def.'s Br. Ex. 2, at § 20.5, ECF No. 25-2.) Virginia generally honors

-9-

of contract interpretation, "[i]t is the court's responsibility to determine the intent of the parties from the language they employ" in the contract. *Bender-Miller Co. v. Thomwood Farms, Inc.*, 179 S.E.2d 636, 639 (Va. 1971). Furthermore, "where the parties' intent is clear and contractual language amenable to only one reasonable interpretation, courts are to construe contractual language according [to] its plain and ordinary meaning." *Foothill Capital Corp. v. E. Coast Bldg. Supply Corp.*, 259 B.R. 840, 844 (E.D. Va. 2001).

The Ackens assert that Section 5.3(A) of the Lease required Kroger to maintain a "standard fire and all risk insurance policy" that would provide coverage for the costs of repair for the damaged HVAC units. "'All risk' insurance contracts are a type of insurance where the insurer agrees to cover all risks of loss except for certain excluded events." *Ins. Co. of N. Am. v. U.S. Gypsum Co.*, 678 F. Supp. 138, 141 (W.D. Va. 1988), *aff'd*, 870 F.2d 148 (4th Cir. 1989). In other words, "the insurer agrees to pay for all fortuitous losses that are not excluded under the contract." *St. Paul Fire & Marine Ins. Co. v. Gen. Injectables & Vaccines, Inc.*, No. CIV.A.98-07370R, 2000 WL 270954, at *2 (W.D. Va. Mar. 3, 2000).

---

contractual choice-of-law provisions. *Thornhill v. Donnkenny, Inc.*, 823 F.2d 782, 786 (4th Cir. 1987). Moreover, the parties have relied on the application of Virginia law in their arguments.

In this context, a fortuitous loss is defined in various ways, but is essentially an event that is dependent on chance, an accident, or is unexpected. *See Fid. & Guar. Ins. Underwriters, Inc. v. Allied Realty Co.*, 384 S.E.2d 613, 615 (Va. 1989) (stating that "[a] fortuitous loss is one that does not result from any inherent defect in the property insured, ordinary wear and tear, or intentional misconduct"). The insured has the burden of proof to establish that the loss was fortuitous. *U.S. Gypsum Co.*, 678 F. Supp. at 141.

Kroger does not argue, however, that the theft in this case was not fortuitous. In fact, the parties do not dispute that the theft was an unexpected event. Kroger even acknowledges that "[t]he theft was an isolated incident," because "there had been no vandalism, theft, or other type of criminal activity at the Property or in its vicinity during the Lease." (Def.'s Br. 7, ECF No. 25.) Kroger has also not alleged any misconduct or negligence on the part of the Ackens that resulted in the theft. Under these circumstances, the unexpected theft of the HVAC piping would constitute a fortuitous event for purposes of an all risk insurance policy. *See Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 257 (6th Cir. 1994).

Kroger argues that the theft was excluded from coverage under the Lease. In support of this argument, Kroger references numerous cases in which courts have held that damage resulting from the theft of materials similar to copper piping or wiring is not an insured loss. *See, e.g., Certain Underwriters at Lloyds London*

-11-

*v. Law*, 570 F.3d 574, 579 (5th Cir. 2009); *Summit Bank & Trust v. Am. Modern Home Ins. Co.*, No. 12-cv-02395-JLK, 2014 WL 3512770, at *3 (D. Colo. July 15, 2014); *Certain Underwriters at Lloyd's of London v. Corporate Pines Realty Corp.*, No. H-06-3361, 2008 WL 5245622, at *9 (S.D. Tex. Dec. 15, 2008), *aff'd*, 355 F. App'x 778 (5th Cir. 2009); *Gen. Star Indem. Co. v. Zelonker*, 769 So. 2d 1093, 1094 (Fla. Dist. Ct. App. 2000). These cases are not applicable, however, because each involved insurance policies with specific exclusions for theft. *See Law*, 570 F.3d at 576; *Summit Bank*, 2014 WL 3512770, at *3; *Corporate Pines*, 2008 WL 5245622, at *9; *Zelonker*, 769 So. 2d at 1094.

Kroger did not purchase an insurance policy pursuant to Section 5.3(A) of the Lease, so no insurance policy exists that provides exclusions for theft or analogous events in this case. Therefore, Kroger cannot successfully assert that the theft — the fortuitous event in this case — was excluded from coverage under the "standard fire and all risk insurance policy" requirement.

More importantly, rather than maintaining a "standard fire and all risk insurance policy," Kroger elected to self insure the Premises pursuant to Section 5.3(C) of the Lease. Under this provision, Kroger was required to insure "against fire and casualty" loss, without any reference to limitations or exclusions regarding coverage. (Def.'s Summ. J. Br. Ex. 2, at § 5.3(C), ECF No. 25-2.) Kroger has not

-12-

pointed to any provision of the Lease that would limit the scope of Kroger's liability for a "casualty loss."

For purposes of insurance coverage, "casualty" is broadly defined. "Casualty insurance" is "[a]n agreement to indemnify against loss resulting from a broad group of causes such as legal liability, theft, accident, property damage, and workers' compensation." Black's Law Dictionary 871 (9th ed. 2009). Similarly, "[b]urglary or theft insurance is regarded as a branch of casualty insurance." 44 C.J.S. *Insurance* § 6 (2007). As a general rule, the insurer has the burden to show that an exclusion to coverage applies. *See Bituminous Cas. Corp. v. Sheets*, 389 S.E.2d 696, 698 (Va. 1990) ("Where an insured has shown that his loss occurred while an insurance policy was in force, but the insurer relies upon exclusionary language in the policy as a defense, the burden is upon the insurer to prove that the exclusion applies to the facts of the case."); *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) ("[T]he burden is upon the insurer to prove that an exclusion of coverage applies.").

Pursuant to these authorities, the theft of the HVAC piping constituted a casualty loss as a matter of law. Consequently, Kroger is liable under the Lease as the self insurer of the loss resulting from the theft of copper piping from the HVAC units.

B. Consequential Damages.

The Ackens also seek consequential damages for the loss of rent.[4]   As defined under Virginia law, "[c]onsequential damages occur from the intervention of special circumstances that are not ordinarily predictable." *Long v. Abbruzzetti*, 487 S.E.2d 217, 219 (Va. 1997).  Consequential damages "are compensable only if the special circumstances were within the contemplation of all contracting parties at the time the contract was made." *Id.*  "In this context, 'contemplation' includes that which was actually foreseen or reasonably foreseeable." *Danburg v. Keil*, 365 S.E.2d 754, 757 (Va. 1988).  "[T]he issue whether special circumstances were within the contemplation of the parties is a question of fact." *Long*, 487 S.E.2d at 219.

The Fourth Circuit has held that consequential damages are available when an insurer breaches its contractual duty of good faith.  *See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 677 (4th Cir. 1986); *see also Moorehead v. State Farm Fire & Cas. Co.*, 123 F. Supp. 2d 1004, 1006 (W.D. Va. 2000); *TIG Ins. Co. v. Alfa Laval, Inc.*, No. 3:07CV683, 2008 WL 639894, at *3 (E.D. Va. Mar. 5, 2008).  In reaching this conclusion, the Fourth Circuit stated that

---

[4] To the extent the Ackens discuss this issue, they focus on their claim for lost rent during the period of time associated with Kroger's alleged duty to repair the Premises, and not Kroger's duty to insure for casualty loss.  For the reasons set forth in subpart C below, I find that Kroger had no contractual duty under the Lease to repair the HVAC units.  Nevertheless, consequential damages might also be associated with Kroger's breach of its contractual duty to insure the Premises.

-14-

"[p]ermitting consequential damages within the scope of contract law lessens the incentive for an insurer to postpone satisfaction in hopes of pressuring the insured to accept a fraction of his due." *A & E Supply Co.*, 798 F.2d at 678.

For these reasons, it may be reasonably foreseeable that an insurer's failure to pay insurance proceeds in connection with a casualty loss would result in additional economic loss associated with the inability to repair the damaged property. Nevertheless, in this case the Ackens have failed to provide evidence in opposition to Kroger's Motion for Summary Judgment of any consequential damages in the form of lost rent, which is fatal to their claim. Under federal summary judgment procedures, the Ackens had the burden to come forward with admissible evidence in opposition to Kroger's motion. *See Cray Commc'ns, Inc., v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393 (4th Cir. 1994) ("[U]nder *Celotex,* 'the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Moreover, "neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (internal quotations marks and citations omitted).

In Kroger's answer to the Ackens' original Complaint, Kroger included a January 8, 2013, email from the Ackens' attorney, John H. Shott, in which he stated that "[t]here are two prospective tenants which are interested in the building, but won't consider occupying it without the heating/cooling units completely repaired/replaced." (Def.'s Answer Ex. 2, ECF No. 3-2.)

This claim was rebutted, however, during Mr. Acken's July 15, 2014, deposition testimony, which was included as an exhibit to Kroger's brief in support of its motion for summary judgment. Specifically, during Mr. Acken's testimony, he was asked about various prospective tenants and whether "anyone expressed to you the issue with the H.V.A.C. system in its current condition being a problem with them wanting to lease your property?" (Def.'s Br. Ex. 1, at 57:1–57:4, ECF No. 25-1.) Mr. Acken's response was that

> I'm not sure that anybody looked at that part of the property because they were primarily interested in the interior of the building to see what would suit . . . what would suit their needs, as far as square footage, and how they could modify it to suit their needs.

(*Id.* at 57:5–57:10.)

In total, Mr. Acken was asked about this issue twice during his deposition and never asserted that the damage to the HVAC units prevented the lease of the Premises. Without evidence of actual damages, the Ackens cannot recover consequential damages resulting from Kroger's breach of its contractual duty to compensate for the casualty loss to the HVAC units. *See Rogers v. Deane*, 992 F.

Supp. 2d 621, 629 (E.D. Va. 2014) ("Proof of actual damages is an essential element of a breach of contract claim.").  As a result, summary judgment in favor of Kroger is appropriate regarding the issue of consequential damages.

### C.  Duty to Repair.

The Ackens assert that Kroger breached the parties' contract by failing to repair the Premises as required under the Lease.  In support of their motion for summary judgment, the Ackens argue that various provisions of the Lease, including the previously quoted Sections 3.1, 5.4, 6.1, and 17, required Kroger to repair the damage to the HVAC units as a part of its obligation to not permit damage or injury to the Premises and leave it in good condition upon termination of the Lease.

In support of their position, the Ackens reference a Virginia statute which states that

> [n]o covenant or promise by a lessee to pay the rent, or that he will keep or leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise, in whole or in part, without fault or negligence on his part, . . . of binding him to make such payment or repair or erect such buildings again, *unless there be other words showing it to be the intent of the parties that he should be so bound.*

Va. Code Ann. § 55-226 (emphasis added).  The Ackens assert that pursuant to the Lease provisions referenced in their brief, that Kroger was bound to make payment for or repair the damage to the HVAC units.

The Ackens, however, misconstrue Kroger's repair obligations under the Lease. As previously discussed, Kroger was the insurer of the casualty loss suffered as a result of the theft and is contractually obligated as the insurer to make payment for the associated loss. In contrast, Kroger — as the tenant under the Lease — was not bound to repair the HVAC units based on the various "good repair" provisions of the Lease. In fact, Section 5.4 of the Lease specifically states that Kroger was required to "perform all ordinary repairs and maintenance in and about the Premises as Tenant deems necessary to prevent waste, damage or injury to the Premises, ordinary wear and tear and *damage from insured casualty excluded and excepted*." (Def.'s Br. Ex. 2, at § 5.4 (emphasis added).)

In its capacity as the tenant, Kroger was not required to make repairs for damages resulting from a casualty loss. Therefore, the Ackens cannot assert a claim for breach of contract based on Kroger's failure to repair the damaged HVAC units pursuant to its obligations as the tenant under the Lease.

### D. Claim of Negligence.

In their Amended Complaint, the Ackens also assert a claim based on Kroger's alleged "negligence or other fault." (Pls.' Am. Compl. 6, ECF No. 17.) Kroger seeks summary judgment regarding this claim.

The Ackens' negligence claim is based solely on the same Lease provisions referenced in conjunction with their first breach of contract claim alleging failure

to pay for or repair the damages to the HVAC units. If the Ackens are seeking to assert a tort based claim for negligence resulting from Kroger's breach of a contractual duty, then their claim fails as a matter of law. The Virginia Supreme Court has held that "in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007) (quoting *Foreign Mission Bd. of the S. Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)).

To determine whether the Ackens' cause of action is based on a claim of breach of contract or negligence, the source of the violated duty must be determined. *See Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). In making this determination, the Virginia Supreme Court has stated that:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Id.* at 347 (quoting *Oleyar v. Kerr*, 225 S.E.2d 398, 399-400 (Va. 1976)).

In this case, the Ackens' breach of contract claim asserting negligence falls within the former category and cannot be asserted as an independent tort claim.

-19-

Therefore, any claim by the Ackens alleging negligence may only be considered within the context of their cause of action for waste.

### E. Retention of Rental Payments.

The Ackens also assert that they are entitled to a declaratory judgment allowing them to retain the rental payments made by Kroger in 2013 for the "use and occupancy" of the Premises for the period of time during which repairs to the HVAC units were not performed. The Ackens' argument is that Kroger's failure to repair the HVAC units and its payment of rent in 2013 resulted in a holdover tenancy.

Pursuant to Virginia law,

> when a tenant, who has previously rented for a term of years, or for one year, holds over possession of premises beyond his original term, without more, upon the election of the landlord to hold him as a tenant from year to year, the law implies a contract on the part of the tenant to remain and pay rent as a tenant from year to year.

*Grice v. Todd*, 91 S.E. 609, 609 (Va. 1917). For purposes of identifying a holdover tenancy, the critical issue is whether the tenant has retained possession of the property following the expiration of the lease. *Nehi Bottling Co. v. All-Am. Bottling Corp.*, 8 F.3d 157, 163 (4th Cir. 1993); *see also* Va. Code Ann. § 55-223 (referencing a tenant's failure to "vacate" a leased premises and the possibility of a holdover tenancy or, alternatively, damages for "use and occupation" during a period of involuntary possession). "To vacate is to make vacant or empty . . .

especially, to surrender possession by removal; to cease from occupancy." *Nehi Bottling Co.*, 8 F.3d at 163 (internal quotation marks and citation omitted).

In this case, the parties do not dispute that Kroger physically vacated the Premises prior to the expiration of the Lease and that Kroger provided timely notice of its intent to terminate the Lease. Rather, the parties dispute whether the failure to repair the HVAC units constitutes a holdover tenancy under Virginia law. I have located no Virginia case law directly on point regarding this issue.

The Ackens point to non-Virginia case authority holding "that whether the tenant's failure to repair amounts to a holdover is a question of fact to be decided in light of the surrounding circumstances." *Consumers Distrib. Co. v. Hermann*, 812 P.2d 1274, 1277 (Nev. 1991). In contrast, other courts have taken the position that "'a tenant who has vacated [the] premises but breached covenants to repair cannot be held liable for holdover rent while the repairs are made and the premises unleased.'" *Charlebois v. Carisbrook Indus., Inc.*, 803 N.Y.S.2d 795, 797 (N.Y. App. Div. 2005) (alteration in original) (quoting *Arnot Realty Corp. v. New York Tel. Co.*, 665 N.Y.S.2d 478 (N.Y. App. Div. 1997)). *But see SDR Assocs. V. ARG Enters., Inc.*, 821 P.2d 268, 271 (Ariz. Ct. App. 1991) ("A tenant's failure to return the property to its original condition as required by the lease entitles the landlord to loss of rent during the time necessary to restore the premises.").

Regardless of the conflicting authority, I have already concluded that Kroger was under no obligation as a tenant to repair the damaged HVAC units. Kroger had a contractual obligation as an insurer under the Lease to compensate for the loss resulting from the damage to the HVAC units. Therefore, Kroger was not under any obligation to retain the use and occupancy of the Premises as a tenant in order to repair the HVAC units after the expiration of the Lease.

More properly framed, the Ackens' argument implies that Kroger's breach of its contractual obligation to insure the casualty loss triggered a holdover tenancy. This argument, however, conflates Kroger's obligation as a tenant with its obligation as an insurer. It also fails to make the essential connection between some form of continued possession of the Premises by Kroger and any associated holdover liability.

Accordingly, I find that the Ackens are not entitled to retain the 2013 payments as holdover rent.

### F. Claim for Waste.

The final cause of action asserted by the Ackens in their Amended Complaint is a tort-based claim for waste resulting from Kroger's alleged negligence in failing to prevent damage to the HVAC units. Unlike the Ackens' breach of contract claim, the claim for waste is not based on any alleged contractual obligation to return the Premises in good repair.

-22-

Kroger has moved for summary judgment regarding the Ackens' claim for waste. Kroger asserts that it had no legal duty to protect the Premises from the criminal acts of third parties and, even if a duty did exist, it did not breach its duty in this case.

Permissive waste is defined as "[a] tenant's failure to make normal repairs to property so as to protect it from substantial deterioration." Black's Law Dictionary 1728 (9th ed. 2009); *see also Chosar Corp. v. Owens*, 370 S.E.2d 305, 307 (Va. 1988) ("Generally, waste is defined as '[a] destruction or material alteration or deterioration of the freehold, or of the improvements forming a material part thereof, by any person rightfully in possession, but who has not the fee title or the full estate.'" (quoting Black's Law Dictionary 1425 (5th ed. 1979))). The plaintiff has the burden to establish a tenant's negligence when asserting a tort claim for waste. *See Kavanaugh v. Donovan*, 41 S.E.2d 489, 492–93 (Va. 1947).

A claim for negligence under Virginia law requires "(1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999). "The issue whether a legal duty in tort exists is a pure question of law." *Kellermann v. McDonoug*h, 684 S.E.2d 786, 790 (Va. 2009). In contrast, whether the duty was breached is a question of fact. *Jappell v. Am. Ass'n of Blood Banks*, 162 F. Supp. 2d 476, 479 (E.D. Va. 2001).

-23-

Kroger asserts that a tenant does not owe a legal duty to a landlord to protect leased property from the criminal acts of third parties. I have not discovered any Virginia law on point. Outside of Virginia, a Maryland appellate court recently considered this issue in affirming a trial court's legal determination that a tenant owes no duty to a landlord to secure leased property against the unforeseeable criminal acts of a third party. *Evergreen Assocs., LLC v. Crawford*, 75 A.3d 1038, 1040, 1047 (Md. Ct. Spec. App. 2013). *But see Granger Univ. Ave. Corp. v. First State Ins. Co.*, 473 N.Y.S.2d 813, 815 (N.Y. App. Div. 1984) (imposing a legal duty where there were numerous prior instances of criminal activity effecting the leased property).

I find *Evergreen* persuasive in this context. First, the Virginia Supreme Court has held that "a landlord does not owe a duty to protect his tenant from a criminal act by a third person." *Gulf Reston, Inc. v. Rogers*, 207 S.E.2d 841, 844 (Va. 1974). It should follow that a tenant owes no greater duty to a landlord. Moreover, the damage caused to the HVAC units in this case was the result of isolated and unforeseeable criminal activity. I previously reached this same conclusion in finding that the resulting damage to the HVAC units would constitute a fortuitous loss for purposes of insurance liability under an "all risk" policy. For these reasons, I conclude that Kroger did not owe the Ackens a legal duty to protect the Premises from the unforeseeable criminal acts of third parties.

Without identifying a legal duty in this context, the Ackens cannot establish a prima facie case for negligence.

## G. Repayment of Rental Payments.

The parties both seek summary judgment regarding Kroger's counterclaims for conversion and unjust enrichment. First, Kroger asserts that the Ackens converted 10 rental payments made by Kroger in 2013, because Kroger had no legal obligation to make the payments and the Ackens had no legal right to receive the payments. I find that recovery by Kroger is proper under the legal theory of conversion but not a theory of unjust enrichment.

Under Virginia law, conversion is "'any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith.'" *Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517–18 (E.D. Va. 2001), *aff'd*, 63 F. App'x 630 (4th Cir. 2003) (unpublished) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)). To establish a claim for conversion, the plaintiff must prove: "the ownership or right to possession of the property at the time of the conversion and . . . the defendant's conversion by the wrongful exercise of dominion or control over the plaintiff's property, depriving plaintiff of possession." *Fed. Ins. Co.*, 144 F. Supp. 2d at 518.

The Ackens assert that Kroger was liable for the rent payments made after December 31, 2012 and, therefore, Kroger cannot assert a claim for conversion. I

have already determined, however, that the Ackens are not entitled to recover consequential damages for lost rent or rent resulting from an alleged holdover tenancy in this case. Therefore, the Ackens were not legally entitled to retain the rent payments made by Kroger in 2013. For these reasons, Kroger is entitled to summary judgment regarding its conversion claim.

The basis for Kroger's unjust enrichment claim is identical to its conversion claim and is essentially an alternative theory of recovery for the payments it made to the Ackens in 2013. Pursuant to Virginia law, "unjust enrichment is a quasi-contract claim based on equity." *The Christian Broad. Network, Inc. v. Busch*, No. 2:05cv558, 2006 WL 2850624, at *7 (E.D. Va. Oct. 3, 2006). Under this theory of recovery, the parties to the action have no contractual relationship, but one is implied as an equitable remedy. *See id.* at *7–8. To establish a claim for unjust enrichment a plaintiff must allege:

> (1) [a] benefit conferred on the defendant by the plaintiff; (2) [k]nowledge on the part of the defendant of the conferring of the benefit; and (3) [a]cceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.

*Nossen v. Hoy*, 750 F. Supp. 740, 744–45 (E.D. Va. 1990).

In this case, Kroger is not seeking payment for the value of the benefit it rendered to the Ackens, but rather the recovery of the benefit itself. Under these circumstances, Kroger has failed to properly show a claim for unjust enrichment.

-26-

IV.

In summary, I find that Kroger must pay to the Ackens the cost of repair of the HVAC units in accord with Kroger's duty under the Lease to self insure casualty losses. I find that the Ackens are not entitled to retain the 2013 payments to them by Kroger, except as credits against Kroger's obligation to pay the cost of repair as a casualty loss. Finally, I find that the Ackens have not shown that they are entitled to any damages from Kroger over and above the cost of repair. Yet to be determined in the case is the cost of repair of the HVAC units, as well as any possible awards of costs, prejudgment interest, and attorneys' fees.

Accordingly, it is **ORDERED** that the Motions for Summary Judgment (ECF Nos. 24 and 27) are GRANTED IN PART AND DENIED IN PART.

ENTER: November 10, 2014

/s/ James P. Jones
United States District Judge